WATTS et al. v. CRABB et al.

(Circuit Court of Appeals, Ninth Circuit. May 5, 1919.)

No. 3207.

1. EQUITY &#x27F9;345—EVIDENCE—VERIFIED ANSWER.
    The doctrine that, where an answer under oath is not waived in the bill, the denials in a verified answer as to all matters within the personal knowledge of the party answering must be overcome by the evidence of witnesses, or by one witness corroborated by circumstances equivalent in weight to another witness, did not rest upon any specific rule promulgated by the Supreme Court, but upon the general equity practice.

2. EQUITY &#x27F9;345—VERIFIED ANSWER—EVIDENCE TO OVERCOME.
    Regardless of any change which the new equity rules of 1912 might have had on a sworn answer, a decree for complainants in a suit to set aside deeds on the ground that grantor was old and feeble and unduly influenced *held* not open to attack on the theory that a verified answer was filed and such decree could not be based on the testimony of a single wit-

ness; it appearing that the testimony was adequate to support the decree, though more than one witness, or one witness corroborated by circumstances equivalent in weight to another witness, be deemed required.

Appeal from the District Court of the United States for the District of Oregon; Charles E. Wolverton, Judge.

Bill by Jerusha Crabb and John Crabb against Homer I. Watts and others. From a decree for complainants (249 Fed. 357), defendants appeal. Affirmed.

The appellee Jerusha Crabb was the daughter of Thomas Watts, who died intestate on April 20, 1914. The appellants Homer I. Watts and Marvel Watts were her half-brothers, and they and she were the only heirs at law of the estate of Thomas Watts. The appellees brought suit in the court below to set aside two deeds purported to have been executed by Thomas Watts on April 14th, four days before his death, by one of which deeds 120 acres of land were conveyed to Jennie Anderson Watts, wife of said Marvel Watts, and by the other deed 320 acres were conveyed to Vernita Watts, the daughter of Marvel Watts, which deeds were not recorded until after the death of Thomas Watts. The complaint alleged that Thomas Watts, at the time of the execution of the deeds, was very old and feeble in mind and body, and incapable of doing business or of making a conscious or intelligent disposition of his property, and that the deeds were without consideration, and were obtained by fraud and undue influence upon the part of the appellants, while said Thomas Watts was sick in bed at the home of Homer Watts; that the only estate of the decedent, aside from the land so deeded, consisted of 80 acres of incumbered land, the value of which was barely sufficient to pay the mortgage thereon and the expenses of the funeral and the administration of the estate of Thomas Watts. The answer denied that Thomas Watts was so feeble in mind or body as to be incapable of doing business or disposing of his estate, and denied the allegation of undue influence, or of any influence, upon him to induce the execution of the deeds. The court, upon the issues and the evidence, sustained the allegations of the complaint, and decreed that the conveyances be set aside.

Will M. Peterson and James H. Raley, both of Pendleton, Or., for appellants.

Alfred S. Bennett, of Salem, Or., and James A. Fee, of Pendleton, Or., for appellees.

Before GILBERT, ROSS, and HUNT, Circuit Judges.

GILBERT, Circuit Judge (after stating the facts as above). [1] The appellants point to the fact that the bill of the appellees called for an answer under oath, and that the appellees answered under oath, and they invoke the rule that either two witnesses or one witness with corroborating circumstances are required to outweigh an answer asserting a fact responsive to the bill. The new equity rules of 1912 (198 Fed. xix, 115 C. C. A. xix), which were in effect after February 1, 1913, abrogated all prior equity rules. They contain no provision that an answer shall be verified, and they make no reference to the probative effect of an answer under oath, where the oath is not waived. Campbell v. Northwest Eckington Co., 229 U. S. 561, 33 Sup. Ct. 796, 57 L. Ed. 1330, cited by the appellants, is a case in which the issues were made and the cause was tried and decided before the new equity rules were promulgated. The doctrine that where an answer under oath is not waived in the bill, the denials in a verified answer as to all matters within the personal knowledge of the party answer-

ing must be overcome by the evidence of two witnesses, or by one witness corroborated by circumstances equivalent in weight to another witness, did not rest upon any specific rule promulgated by the Supreme Court, but upon a general rule of equity practice, as stated in 2 Story's Equity, § 1528.

[2] In the present case it is not necessary to decide whether the new equity rules have abrogated that rule of practice, for here the essential facts to establish the appellees' case do not rest upon the testimony of any single witness. Thus the allegation that Thomas Watts was old and feeble in mind, and sick and mentally weak and easily influenced, was sustained by the testimony of several witnesses for the appellees, and the finding of fact indicating undue influence on the part of the appellants is deducible from the testimony of witnesses and the surrounding circumstances. The allegation to which the appellants refer, that "Homer I. Watts and his brother have some arrangement between themselves by which they are to be the real owners and receive the benefits from such land," although it was not proven, is not a material allegation to the relief which is sought in the bill.

About four years before his death, Thomas Watts had executed a will in which he bequeathed $200 to his daughter Jerusha, and divided the remainder of his estate between his two sons. About the 16th of March, 1914, he visited his daughter at her home, and remained there until April 10, 1914. While he was there he sent for his will. After having it in his possession a few days, he destroyed it, and stated to his daughter and his granddaughter, "Now it is done, and they will all share equally." Thereafter he was taken seriously ill, and on April 10th Marvel Watts came and carried him to Homer's house, and there he remained in charge of a nurse and the physician attending him until his death, and there he executed the deeds which are the subject of the suit. Jerusha, her husband, and her daughter all testified in substance that, when Marvel Watts came to take his father away, the latter said:

"If you have come after me to take me down to make any papers, or sign any papers, I won't go e'er a step."

To which Marvel answered:

"Father, we have no such intention as that. It shall be divided equal. I won't influence you to sign anything."

Marvel denied this conversation, but the court below was convinced of the truthfulness of the appellees' testimony. The court below heard all of the testimony in open court. That careful consideration was given to the testimony is evidenced by the opinion which is found in the record. The court found, in the testimony of the nurse and the testimony as to Watts' physical and mental condition, together with the testimony of the defendants, that the deeds were procured from Thomas Watts by fraud and deception and undue influence, and by taking advantage of his enfeebled mental and physical condition, that the deeds were not the voluntary and intelligent act of Thomas Watts, and that in equity and good conscience the deeds were fraudulent and void. We find in the record no ground to disturb that conclusion.

The decree is affirmed.